UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TYJUAN GRAY,<br><br>      Plaintiff,<br><br>v.<br><br>SERGEANT WHITE, DEPUTY THORNTON, DEPUTY IRISH, and DEPUTY STORMS,<br><br>      Defendants. | Case No. 23-cv-10507<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

I.   Introduction

Tyjuan Gray is currently incarcerated with the Federal Bureau of Prisons at United States Penitentiary Florence ADMAX. He commenced this *pro se* 42 U.S.C. § 1983 action against Genesee County Deputy Sheriff's Brandon Thornton, Matthew Irish, Connor Storms, and then-Sergeant Jason White. The complaint alleges that the deputies violated the United States Constitution when they assaulted Gray while he was detained at the Genesee County jail in August 2021.

Before the Court is the deputies' motion for summary judgment and Gray's motion for leave to amend the complaint. (ECF Nos. 52, 85). The parties filed their

associated responses and replies. (ECF Nos. 69, 77, 88-89). The Court will decide the motions without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, (1) the deputies' motion for summary judgment is granted, and (2) Gray's motion for leave to amend the complaint is denied.

II.   Background

    A.   *Factual History*

The following account is gleaned from two sources: (1) Gray's deposition testimony, and (2) admissible evidence from the record that Gray fails to rebut.

Gray began his detention at the Genesee County jail in July 2021. (ECF No. 52-16, PageID.960). He was awaiting trial on charges of being a felon in possession of a firearm. (ECF No. 52-2, PageID.835, p.4:25). At 10:20 P.M. on August 18, 2021, Sergeant White directed Deputies Jacob Measel and Daniel Edmondson to transport Gray from a standard holding unit to an isolation cell after he allegedly propositioned a female deputy for sex. (ECF No. 52-3, PageID.926; ECF No. 52-4, PageID.931, ¶ 9; ECF No. 52-7, PageID.937, ¶ 8). The deputies walked to Gray's cell and placed him in handcuffs over his strenuous objections. (ECF No. 52-3, PageID.926).

After arriving at the isolation cell, Deputy Measel directed Gray to stand and place his hands against the wall while he removed Gray's handcuffs. (ECF No. 52-3, PageID.926). Deputy Measel informed Gray that the deputies intended to subject

2

him to a strip search pursuant to jail policy. (ECF No. 52-3, PageID.926; ECF No. 52-4, PageID.931, ¶ 10; ECF No. 52-7, PageID.937, ¶ 10). Although Gray objected to the search initially, he complied eventually. (ECF No. 52-3, PageID.926). Deputy Measel searched Gray's armpits, mouth, and genitals after giving him "multiple loud verbal directives." (ECF No. 52-3, PageID.926). Gray, however, refused to bend, spread his buttocks, and cough so the deputies could verify the absence of concealed contraband in his anus. (ECF No. 52-3, PageID.926; ECF No. 52-4, PageID.931, ¶¶ 10-11).

Deputy Measels noted in a subsequent incident report that:

> After minutes of staff repeating this simple command, Gray stated that since he was strip searched [upon] entering the facility, he was now immune to strip searches within the confines of the Genesee County Jail. Gray also stated that since we had just moved him from his previous housing unit, Staff was to be under the assumption that Gray had no contraband within his body. Deputies Measel, Edmonson, and Sgt. J. White relentlessly explained that this was not the case and a satisfactory strip search had to be completed to ensure there was no contraband on or in Gray's person. Gray once again refused to follow instructions at which time Deputy Measel explained that further insubordination would result in placement in the safety restraint chair until a satisfactory search could be completed. Gray then verbally confirmed he would sit in the safety restraint chair rather than have staff ensure the absence of contraband in his anus.
>
> At approximately 2225, Booking Deputies responded to 5A-ISO with the safety restraint chair at which time Gray was given multiple clear verbal directives to sit in the safety restraint chair under his own power; Gray once again refused these commands.

3

(ECF No. 52-3, PageID.926).

The deputies' recollections materially diverge from Gray's as to what occurred afterwards. (*Compare* ECF No. 52-2 *with* ECF Nos. 52-3-4, 52-7). But Gray maintains that he turned slightly from the isolation cell wall towards the safety restraint chair when Sergeant White – without provocation – sprayed his eyes with a pepper-based solution. (ECF No. 52-2, PageID.894, 903-04, 907, 924, pp.63:5-16, 72:7-9, 73:14-18, 76:21-22, 93:1-3). Gray recalls that Sergeant White then grabbed his testicles, along with the side of his leg, and threw him into the safety restraint chair. (*Id.*, PageID.903, 907, pp.72:2-3, 7-11, 93:9-11).

After the deputies secured Gray in the safety restraint chair, jail video footage depicts them wheeling Gray to the visitation area outside the isolation cell and placing him directly in front of a closed-circuit camera. (ECF No. 52-6, Counter 10:27:56-28:10). Gray is naked and squinting his eyes. (*Id.*, 10:27:56-28:23). A deputy places Gray's jumpsuit over his genitals and another deputy later covers him with a blanket. (*Id.*, Counter 10:28:19-23). A jail nurse appears to examine the restraints at approximately 10:29 P.M. and clear them for Gray's safety. (ECF No. 52-3, PageID.926, 928; ECF No. 52-6, Counter 10:28:56-29:12).

Over the next six hours, deputies removed Gray from the safety restraint chair on three separate occasions to obtain his compliance with their instructions to visually inspect his anus. (ECF No. 52-3, PageID.926-27; ECF No. 52-6, Counter

4

12:29:07-30:42, 2:33:59-35:15, 4:37:26-38:38). He refused their directives to spread his buttocks on the first two attempts. (ECF No. 52-3, PageID.926-27). The deputies received medical clearance to restrain Gray each time they returned him to the safety chair. (ECF No. 52-3, PageID.927-28; ECF No. 52-6, Counter 12:34:43-36:00, 2:39:22-39:49).

Gray eventually complied on the third attempt, at 4:35 A.M the following morning. (ECF No. 52-3, PageID.927; ECF No. 52-12, PageID.948, ¶ 9). Deputy Thornton provided Gray "with clean linens and soap to decontaminate his previous OC spray contamination" at 4:45 A.M. (ECF No. 52-3, PageID.927; ECF No. 52-12, PageID.948, ¶ 10). The officers then secured Gray in the isolation cell. (ECF No. 52-3, PageID.927).

### B.    Procedural History

Gray filed this lawsuit *pro se*, alleging violations of the First, Fourth, Eighth, and Fourteenth Amendments.[1] (ECF No. 1, PageID.4). The deputies now move for summary judgment on the ground of qualified immunity. (ECF No. 52).

---

[1] Gray appears to have abandoned his cause of action under the First Amendment. (ECF No. 69). *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). At any rate, there is no evidence in the record to support his claim that the deputies violated his First Amendment right to "petition the government for a redress of grievances." (ECF No. 1, PageID.4). And both the Fourth and Eighth Amendments are inapplicable because Gray was a pretrial detainee when the alleged constitutional violations occurred. *See*

5

III.   Legal Standards

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The record contains video of some of the events in question. (ECF No. 52-6). The Court views the facts "in the light depicted by the videotape" and may not adopt a factual account that is "blatantly contradicted by the record." *Jackson-Gibson v. Beasley*, 118 F.4th 848, 853-54 (6th Cir. 2024) (quotation omitted). The video's "gaps or uncertainties" must be construed in Gray's favor. *Naji v. City of Dearborn, Michigan*, 120 F.4th 520, 523 (6th Cir. 2024) (quotation omitted).

IV.   Analysis

    A.   *Qualified Immunity Overview*

Section 1983 civil rights plaintiffs must establish that a person acting under the color of state law deprived them of a guaranteed right under the United States Constitution or federal law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978).

---

*Brown v. Chapman*, 814 F.3d 447, 465 (6th Cir. 2016) (stating that "the Eighth Amendment's protections apply specifically to post-conviction inmates."); *Ayala-Rosales v. Teal*, 659 F. App'x 316, 319 (6th Cir. 2016) (holding that pretrial detainee excessive force claims fall under the Fourteenth – not the Fourth – Amendment). So the deputies are entitled to summary judgment on all three causes of action.

6

Government officials typically invoke the defense of qualified immunity to shield themselves from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). Whether an official should be entitled to qualified immunity is a legal question for the courts to decide. *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *see also Tucker v. City of Richmond*, 388 F.3d 216, 219 (6th Cir. 2004).

Federal courts use a two-pronged test to evaluate whether qualified immunity is appropriate. The relevant inquiry is (1) "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated," and (2) "whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (quotation omitted). While the plaintiff bears the ultimate burden of showing that the official is not entitled to qualified immunity, *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006), the defendant has the initial burden of showing that his conduct was objectively reasonable under then-existing law. *Tucker*, 388 F.3d at 220.

The burden then shifts to the "plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such

7

conduct." *Gardenhire*, 205 F.3d at 311; *see also Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The violated right must have been "clearly established at the time" of the incident. *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019). That means courts may "consider only the legal rules existing when the challenged conduct occurred, not legal rules adopted by later caselaw." *Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024) (quotation omitted); *see also Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 694 (6th Cir. 2022) (requiring courts to "look to the law at the time the official acted" when ascertaining whether a right is clearly established).

Courts may address the qualified immunity prongs in any order but need not reach both elements. *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012). This is because qualified immunity shields government officials from civil damages if *either* prong is not satisfied. *Hall v. Sweet*, 666 F. App'x 469, 474 (6th Cir. 2016). Summary judgment on the ground of qualified immunity is improper when "there is a factual dispute (*i.e.*, a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988) (citations omitted).

B.  *Substantive Standard – Fourteenth Amendment Excessive Force*

Gray was a pretrial detainee at the time of the alleged altercation because "a court had yet to try or punish him." *Lawler*, 93 F.4th at 926. Pretrial detainees possess a Fourteenth Amendment right under the United States Constitution not to be "deprive[d]" of their "life" or "liberty . . . without due process of law." U.S. Const. amend. XIV, § 1.

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the United States Supreme Court formulated a two-pronged inquiry for Fourteenth Amendment excessive-force claims. Under the first prong, "an official must purposefully, knowingly, or (possibly) recklessly engage in the alleged physical contact with the detained person." *Hale v. Boyle County*, 18 F.4th 845, 852 (6th Cir. 2021) (quotation omitted); *see also Kingsley*, 576 U.S. at 396-97. Under the second prong, "the official's use of force must be objectively unreasonable." *Hale*, 18 F.4th at 852; *see also Kinglsey*, 576 U.S. at 396-97. Objective reasonableness is evaluated from "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kinglsey*, 576 U.S. at 397.

The following non-exhaustive list of factors all "bear on the reasonableness or unreasonableness of the force used:"

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat

9

>reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397.

> 1. Sergeant White – Clearly Established Law

Assuming Gray's account of his interactions with Sergeant White is accurate (and the Court must presume that it is), his Fourteenth Amendment excessive-force claim cannot survive summary judgment because he fails to show that Sergeant White's actions violated a clearly establish right.

The following salient facts are critical to Gray's own account of what transpired: (1) he adamantly refused to separate his buttocks and display his anus and groin area to the deputies so they could visually confirm he was not secreting contraband (ECF No. 52-2, PageID.883, 885, 887, 888-90, 892-93, p.52:4-24, p.54:13-14, p.56:18-20, p.57:22-24, p.58:1-3, 6-24, p.59:12-21, pp.61:21-62:2); (2) Deputy Measel warned Gray that deputies would place him in a safety restraint chair if he continued to refuse separating his buttocks (*id.*, PageID.893, p.62:8-13; ECF No. 52-4, PageID.931, ¶ 11; ECF No. 52-7, PageID.937, ¶ 11); (3) Gray eventually turned from facing the wall of the isolation cell, intending to move towards the safety restraint chair to sit in it voluntarily (*id.*, PageID.894, 903-04, 924, p.63:5-16, p.72:7-9, p.73:14-18, p.93:1-3); (4) at this juncture, Sergeant White sprayed him in the eyes with pepper spray (*id.*, PageID.903, 907, p.72:7-8, p.76:21-22); and (5) Sergeant

White grabbed his testicles, along with the "side" of his leg, and threw him into the safety restraint chair. (*Id.*, PageID.903, 907, p.72:2-3, 7-11, p.93:9-11).

Yet Gray "identifies no case clearly establishing that every reasonable officer would understand" that Sergeant White's "actions were unlawful." *Whyde v. Sigsworth*, No. 22-3916, 2024 U.S. App. LEXIS 22356, at *9 (6th Cir. Sep. 3, 2024). Even as a *pro se* litigant, Gray must carry his burden to "identify Supreme Court or published Sixth Circuit precedent that would inform a reasonable officer that his specific conduct was unlawful." *Whyde*, 2024 U.S. App. LEXIS 22356, at *7. Especially in the excessive force setting, "an officer is entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.*; *see also Wiley v. City of Columbus*, 36 F.4th 661, 669 (6th Cir. 2022). Gray fails to satisfy this requirement entirely.

Nor could the Court independently locate Supreme Court or published Sixth Circuit authority deciding that a similarly situated corrections deputy employed an unreasonable amount of force in comparable circumstances, *i.e.*, where a pretrial detainee makes a sudden movement and the deputy harbors a legitimate fear that the detainee is concealing contraband, such as a weapon, on or within his person.

In fact, Sixth Circuit precedent appears to cut against Gray on both the brief deployment of pepper spray and the touching of his genitals during the scuffle with Sergeant White and the other deputies. *See, e.g., Jennings v. Peiffer*, 110 F. App'x

11

643, 645-46 (6th Cir. 2004) (holding that corrections officers did not use excessive force under the Eighth Amendment when they sprayed a chemical agent to gain compliance from an inmate who, after ignoring several commands, "may have attempted to obey the order" to remove his shoes); *Jennings v. Mitchell*, 93 F. App'x 723, 724-25 (6th Cir. 2004) (no Eighth Amendment excessive force when corrections officers sprayed chemical agent on an inmate who refused to leave the prison shower); *cf. Hampton v. Defendant One*, No. 19-6194, 2020 U.S. App. LEXIS 14365, at *4-5 (6th Cir. May 5, 2020) (ruling that an inmate failed to state an Eighth Amendment violation where a corrections officer "briefly grabbed his buttock" and used sexually suggestive language); *Ragland v. City of St. Louis*, No. 12-1334, 2013 U.S. App. LEXIS 14686, at *2, 5 (6th Cir. Feb. 11, 2013) (no Eighth Amendment claim where a corrections officer touched an inmate's "genital area in a sexual and provocative nature").

Because Gray cannot establish the violation of a clearly established right under the Fourteenth Amendment, Sergeant White is entitled to summary judgment on qualified immunity grounds.[2]

---

[2] Insofar as Gray asserts that Sergeant White is responsible for placing him in the safety restraint chair for a constitutionally impermissible duration, he cannot establish the violation of a clearly established right under the Fourteenth Amendment. *See, e.g., Howell v. NaphCare, Inc.*, 67 F.4th 302, 321 (6th Cir. 2023) (holding that jail nurse did not use excessive force under the Fourteenth Amendment when placing the decedent in a restraint chair for four hours "without any further

2. Deputies Irish, Storms, and Thornton

As stated above, section 1983 civil rights plaintiffs must establish that a person acting under the color of state law deprived them of a guaranteed right under the United States Constitution or federal law. *Flagg Bros.*, 436 U.S. at 155-56. At the summary judgment stage, the plaintiff is required to adduce sufficient evidence that raises a genuine factual question about the defendant's personal involvement in the violation of his constitutional rights. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *see also Jacob v. Twp. of West Bloomfield*, 192 F. App'x 330, 336 (6th Cir. 2006) ("To succeed in under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation.").

---

check by" the nurse); *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 533 (6th Cir. 2018) (deciding that a plaintiff restrained for three hours failed to show that "the extended use of a restraint chair violated clearly established law."); *cf. Grinter v. Knight*, 532 F.3d 567, 573-574 (6th Cir. 2008) (holding that a due process liberty interest was not implicated where an inmate was placed in restraints for a "four-hour duration" outside a nurse's presence).

  Insofar as Gray contends that Sergeant White violated the Fourteenth Amendment by failing to afford him the opportunity to wash the pepper spray from his face until after the deputies removed him from the safety restraint chair – a six-hour interval approximately – he likewise cannot show the violation of a clearly established right. *See, e.g., Peoples v. Bauman*, No. 16-2096, 2017 U.S. App. LEXIS 27528, at *15 (6th Cir. Sep. 5, 2017) (holding that spraying an inmate with mace and "not permit[ing] [him] to wash it from his body *for about ten days*" may constitute excessive force under the Eighth Amendment) (emphasis added); *Harris v. Jones*, No. 10-1580, 2010 U.S. App. LEXIS 27901, at *4 (6th Cir. Dec. 9, 2010) (reversing an award of summary judgment to corrections officers where the inmate attested that "he was subjected to prolonged restraint and *never* given the opportunity to wash the chemicals off, despite his suffering.") (emphasis added).

Deputies Irish and Storms attest (and the jail's shift assignment records confirm) they were not present at the Genesee County jail when the underlying incident occurred because they were off duty. (ECF Nos. 52-13-52-16, PageID.949-56). And Gray fails to rebut this showing with admissible proof to the contrary. (ECF No. 52-2, PageID.879-80, p.48:25-49:4). So both deputies must be dismissed from this lawsuit since they were not personally involved in subduing Gray, spraying him with pepper spray, or placing him in the safety restraint chair.

Deputy Thornton played a more significant, albeit limited role in Gray's altercation with the deputies. At most, Deputy Measel's incident report notes that Deputy Thornton assisted other deputies with removing Gray from the safety restraint chair on two occasions – at 1:27 A.M. and 4:35 A.M. – and that he provided Gray with soap and water at 4:45 A.M. so Gray could decontaminate himself from the pepper spray. (ECF No. 52-3, PageID.926-28). Since none of these actions rise to the level of a constitutional violation, let alone a clearly establish one, Deputy Thornton must also be dismissed from the case because of qualified immunity.

C. *Amending the Complaint*

Apart from responding to the deputies' summary judgment motion, Gray moves for leave to amend the complaint. (ECF No. 85). Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a pleading should be freely given "when justice so requires." But a court may deny this relief when the amendment

would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021).

Gray proposes to amend the complaint by adding Deputy Daniel Edmondson as a party defendant because he "was a witness" to the altercation with the other deputies. (ECF No. 85, PageID.1206). This amendment would be futile, however, because any constitutional violation asserted against Deputy Edmondson is now beyond the three-year limitations period for section 1983 claims. *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020); *see also* Mich. Comp. Laws § 600.5805(2).

Gray further seeks to amend the complaint to add an unspecified "retaliation claim" and a request for punitive damages in the amount of $75,000. (ECF No. 85, PageID.1206). Because these proposed amendments fail to state a plausible claim for relief they are, likewise, futile. *See* Fed. R. Civ. P. 8(a)(2) (stating that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Gordon v. Schoyck*, No. 20-3372, 2020 U.S. App. LEXIS 37312, at *14-15 (6th Cir. Nov. 25, 2020) (affirming the denial of a request for leave to amend the complaint to "allege new unspecified facts that have been discovered") (internal quotation marks omitted).

For all these reasons, Gray's motion for leave to amend the complaint must be denied. Accordingly,

15

IT IS ORDERED that the deputies' motion for summary judgment (ECF No. 52) is granted.

IT IS FURTHER ORDERED that Gray's motion for leave to amend the complaint (ECF No. 85) is denied.

IT IS FURTHER ORDERED that Gray's motion for the appointment of counsel (ECF No. 86) is denied as moot.

Dated: January 13, 2026                s/ Robert J. White
                                       Robert J. White
                                       United States District Judge